## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **CHRISTOPHER MANSKE**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**HEALTHRIGHT LLC**, a Delaware limited liability company,<br><br>Defendant. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

1.     Plaintiff Christopher Manske ("Manske" or "Plaintiff") brings this Class Action Complaint against Defendant HealthRight LLC ("HealthRight" or "Defendant") to: (1) stop its practice of placing calls using an automatic telephone dialing system ("ATDS") to the cellular telephones of consumers nationwide without their prior express consent; (2) stop its practice of placing calls to telephone numbers listed on the National Do Not Call Registry; (3) enjoin Defendant from continuing to place autodialed telephone calls to consumers who did not provide their prior express consent to receive them, or who revoked such consent; and (4) obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2.      The Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA" or the "Act") was enacted to protect consumers from unauthorized calls like those alleged in this Complaint – autodialed calls placed to cellular telephone numbers without each consumer's prior express written consent.

3.      Defendant's violations of the Act have caused Plaintiff and the members of the Classes (defined below) to experience actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of autodialed calls, in addition to the loss of functionality, diminution in available data and battery life, and the ability to use and enjoy their cellular telephones.

4.      In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit, seeking (1) an injunction requiring Defendant to cease placing autodialed calls to cellular telephones without the express consent of the recipients, and (2) an award of statutory damages to the members of the putative Classes under the TCPA to be paid into a common fund for the benefit of the Class Members, together with costs and reasonable attorneys' fees.

## PARTIES

5.      Plaintiff Manske is a natural person who is a citizen and resident of Itasca County, Minnesota.

6.      Defendant HealthRight is a limited liability company incorporated and existing under the laws of the State of Delaware whose primary corporate headquarters is located at 181 Washington Street, Six Tower Bridge, Suite 450,

Conshohocken, Pennsylvania 19428. HealthRight does business throughout the United States, including in the State of Minnesota and this District.

## JURISDICTION & VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227, a federal statute.

8.      The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant regularly conducts business in the State of Minnesota and in this District, and a substantial part of the events giving rise to the claims asserted here occurred in or emanated from this District. Venue is additionally proper in this District because Plaintiff resides in this District.

## COMMON ALLEGATIONS OF FACT

9.      The Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* and its implementing regulations, 47 C.F.R. §64.1200, *et seq.* prohibit companies, such as HealthRight, from placing calls using an ATDS ("autodialed calls") and/or using an artificial or prerecorded voice ("prerecorded calls") when making calls to cellular telephones without first obtaining consent. HealthRight has violated, and continues to violate, the TCPA and its implementing regulations by placing autodialed calls to cellular telephone subscribers (a) who had recycled (or reassigned) cellular telephone numbers who have not expressly consented to receiving such calls and/or (b) who have expressly requested not to receive such calls.

10.    HealthRight purports to provide "a unique membership program created to fill gaps in the current health care system," to connect clients "to convenient, dependable, and affordable health care when you need it the most, including 24/7 access to nurses and doctors, plus significant savings on lab testing, imaging studies, prescriptions, and more."[1]

11.    In many instances, HealthRight's calls to consumer's cellular telephones violate the TCPA because: (1) the telephone owner did not consent to receiving the calls (i.e., the consent, if it was obtained at all, was obtained from the prior owner of that telephone number), and/or (2) the current cellular telephone owner has expressly requested not to receive such calls.

12.    Indeed, last year, the FCC explicitly ruled that:

[T]he TCPA requires the consent not of the intended recipient of a call, but of the current subscriber (or non-subscriber customary user of the phone) and that caller best practices can facilitate detection of reassignments before calls. We generally agree with commenters who oppose granting these requests that there are solutions in the marketplace to better inform callers of reassigned wireless numbers; that businesses should institute new or better safeguards to avoid calling reassigned wireless numbers and facing TCPA liability; and that the TCPA requires consent from the actual party who receives a call.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, WC No. 07-135, FCC 15-72 (rel. July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order (the "July 2015 FCC Order".)

---

[1] http://www.healthright.com/overview/about-healthright/

13.     While some HealthRight customers may elect to receive autodialed calls,[2] anyone in the U.S. can receive autodialed calls from HealthRight on their cellular telephone even if they do not have any prior relationship with HealthRight at all. Thus, as with Plaintiff, HealthRight places autodialed calls to current subscribers of recycled cellular telephone numbers (many of whom do not even have a relationship with HealthRight) who have never consented to receiving such autodialed and/or prerecorded calls.

14.     For various reasons, cellular telephone subscribers deactivate and relinquish their cellular telephone numbers. Once deactivated, the cellular telephone carrier reassigns the number to another subscriber – a practice known as "recycling." Recycling times (i.e., the time between deactivation and reassignment) vary across carriers, generally ranging from 30 days to six months depending on location and demand. During the recycling period, the cellular telephone number is considered disconnected.

15.     In some instances, the prior owner of a recycled telephone number may have consented to receiving autodialed calls from HealthRight. But, even if the prior owner consented, that consent does not transfer to the new recycled cellular telephone number's owner. Ultimately, new owners of recycled cellular

---

[2] Defendant explicitly acknowledges that they use an ATDS. *See* http://www.healthright.com/terms/ ("By subscribing to HealthRight.com you expressly request to receive information via telephone call, email and text/SMS message (including through the use of an automatic telephone dialing system or artificial/prerecorded voice.")

telephone numbers are given no choice in receiving, addressing, and in paying for HealthRight's autodialed calls.

16.     The mobile marketing industry is aware of cellular telephone number recycling and, in particular, the risk associated with placing autodialed and/or prerecorded calls to non-consenting recycled numbers. To help mobile marketers navigate regulatory compliance, the Mobile Marketing Association ("MMA") publishes specific guidelines based on accepted industry practices for all mobile marketers. In its October 2012 U.S. Consumer Best Practices for Messaging, the MMA recommends that mobile marketers, such as HealthRight, "have appropriate and effective systems and processes for managing deactivation and recycled number information. These systems and processes should be designed to ensure that mobile content programs subscribed to by previous holders of a specific phone number do not continue to be delivered or billed to a subsequent holder of that number when it is reassigned." The MMA further advises mobile marketers to "process deactivation information within three business days of receipt."[3]

17.     In response to the liability risk associated with recycled numbers, numerous commercially available services exist to help companies that call others using autodialers, such as HealthRight, identify recycled numbers and non-

---

[3] The MMA is a global trade organization that issues codes of conduct, best practices, guidelines, rules and instructions for companies engaged in mobile marketing. Its U.S. Consumer Best Practices for Messaging are based on accepted industry practices, common wireless carrier policies and regulatory guidance. With over 800 members, the MMA is the preeminent source for mobile marketing information and expertise.

consenting cellular subscribers. For instance, companies such as Infutor, Nextmark List, and Contact Center Compliance advertise their ability to instantly identify and flag disconnected telephone numbers from cellular telephone number data lists on a recurring basis (such as weekly or monthly). This type of service can identify disconnected numbers before they are recycled, thereby alerting mobile marketers that any consent associated with those telephone numbers has been terminated.

18.    Despite the FCC's ruling, the industry guidelines, the commercial availability of programs that help callers filter out recycled numbers, and the obvious lack of consent associated with recycled numbers, HealthRight fails to take the necessary steps to insure that its autodialed calls are placed only to consenting recipients.

19.    Rather, HealthRight simply treats the new recycled cellular telephone number owner as if he or she were the previous owner. As such, if the previous owner gave consent to receive HealthRight's autodialed calls, Performant Financial continues to treat that consent as the consent of the new (unassociated) owner. New owners are then forced to incur the cost and bother of receiving HealthRight's autodialed calls. Notably, new owners are provided no explicit means to contact HealthRight to make the autodialed calls stop. And, as evidenced by numerous complaints on internet message boards, HealthRight often disregards consumers' "stop" requests entirely.

20.    In addition, telemarketers who wish to avoid calling numbers listed on the National Do Not Call Registry can easily and inexpensively do so by

"scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

21.     To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the National Do Not Call Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

22.     There are numerous third party services that will additionally scrub the call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[4] Indeed, one service notes that they can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[5]

23.     The following sample of consumer complaints regarding autodialed and/or prerecorded calls evidences HealthRight's practice of disregarding recycled numbers and the National Do Not Call Registry and placing autodialed calls to non-consenting cellular telephone owners:

- This caller claims to be Health Right. I have multiple calls from them daily. There is never a voice mail left if I don't answer. The last time I did answer and told them the person

---

[4] See e.g. http://www.dncsolution.com/do-not-call.asp;
http://www.donotcallprotection.com/do-not-call-compliance-solutions-1;
http://www.mindwav.com/tcpa_compliance_solution.asp;
[5] https://www.neustar.biz/services/tcpa-compliance

they were calling was unavailable. When I asked to take a message they were hesitant to give me any information. I persisted and they said it was an important matter with Health Right. She even spelled it for me. I hung up and blocked their number.[6];

- 5-7 calls a day for the last week. Blocked out but they still call it just doesn't ring. They are in missed calls. No voice-mail.[7];

- Called me trying to sell pharmaceutical, supplys and prescription drugs. wont stop calling, what a pain.[8];

- I get 4 or 5 calls a day from this number.[9]

24.     HealthRight knows or should know that its autodialed calls are placed to non-consenting, recycled cellular telephone number subscribers. Indeed, HealthRight has received numerous consumer complaints alerting it to this very fact and requesting that the autodialed calls stop. Ultimately, HealthRight is responsible for verifying cellular telephone number ownership and obtaining consent before placing autodialed calls to cellular telephone subscribers. Even with prior cellular subscriber consent, HealthRight is liable under the TCPA for placing autodialed calls to cellular telephone numbers reassigned to new subscribers without the new subscriber's consent. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012) (under the TCPA, "[c]onsent to call a given number must come from its current subscriber," not its prior subscriber); *Breslow v. Wells Fargo*, 755 F.3d 1265, 1267 (11th Cir. 2014)

---

[6] http://800notes.com/Phone.aspx/1-888-703-6417
[7] *Id.*
[8] http://800notes.com/Phone.aspx/1-855-880-7673/2
[9] *Id.*

(consent from "called party" means consent from the person subscribing to the called number at the time the call was made, not the former subscriber); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, ¶ 123, 18 FCC Rcd. 14014, 2003 WL 21517853 (2003) ("we reject proposals to create a good faith exception for inadvertent autodialed or prerecorded calls to wireless numbers…")

25.     When placing these calls to consumers, HealthRight failed to get the prior express consent of cellular telephone owners/users as required by the TCPA to make such calls.

26.     Furthermore, Defendant calls these consumers who have no "established business relationship" with Defendant and who are registered on the National Do Not Call Registry.

27.     Given the multitude of readily available commercially feasible resources to identify such consumers, HealthRight had ready means to identify those consumers and to obtain their prior express consent before placing autodialed calls to their cellular telephones.

## HEALTHRIGHT'S UNAUTHORIZED AUTODIALED CALLS SENT TO STOP-REQUEST RECIPIENTS

28.     HealthRight also places autodialed calls to cellular subscribers who have expressly "opted-out" or requested not to receive its autodialed and/or prerecorded calls. Notably, many of these cellular subscribers did not consent to receiving HealthRight's autodialed calls in the first place. But, even with any

hypothetical prior express consent, HealthRight is required to honor each stop-request as a termination of any prior consent. Accordingly, any autodialed calls made to a cellular subscriber after receiving an express stop request is done without prior express consent.

29.    HealthRight simply ignores statutory duties and accepted industry guidelines. Instead, HealthRight makes it difficult for consumers to opt-out or stop receiving such autodialed calls.

30.    Despite receiving numerous express stop requests from cellular subscribers, including Plaintiff, HealthRight continues to place autodialed calls to these subscribers, sometimes for months and years afterwards.

31.    HealthRight knows, or consciously disregards the fact, that its autodialed calls to these cellular subscribers are unauthorized.

**FACTS SPECIFIC TO PLAINTIFF CHRISTOPHER MANSKE**

32.    In July 2016, Plaintiff Manske acquired a new cellular telephone and a new cellular telephone number.

33.    Plaintiff registered his cellular telephone number with the Do Not Call Registry on July 3, 2016 for the express purpose of avoiding unwanted telemarketing calls.

34.    Beginning on August 25, 2016 Plaintiff began to receive autodialed telephone calls on his cellular telephone from Defendant using phone numbers 218-301-2790 and 218-297-7703. Every time Plaintiff answered the calls, there

would be a notable silence on the other end of the line for a moment, a hallmark sign that Defendant was and is using an ATDS.

35.    Upon receiving the first unsolicited autodialed call, Plaintiff explained that he wasn't interested and asked the agent to stop calling.

36.    Despite his request for the unsolicited autodialed calls to stop, Plaintiff received numerous additional calls from Defendant. When he was able to, Plaintiff would make additional requests for the calls to stop.

37.    Over a period of one month, Plaintiff received approximately 50 autodialed telephone calls from Defendant. On some days Plaintiff would receive multiple calls.

38.    On September 28, 2016 at 2:30 PM, Plaintiff received yet another autodialed call on his cellular telephone from Defendant using phone number 218-301-2790. Plaintiff again asked for Defendant to stop calling him. Defendant's agent became belligerent, leaving Plaintiff with the feeling that he would receive more calls.

39.    At no time did Plaintiff Manske consent to the receipt of autodialed calls to his cellular telephone from HealthRight, let alone providing prior oral or written express consent to HealthRight for such calls to be placed.

40.    By making unauthorized autodialed telephone calls as alleged herein, HealthRight has caused consumers actual harm. In the present case, a consumer could be subjected to many unsolicited autodialed telephone calls as the HealthRight's opt out mechanism simply does not work.

41.    In order to redress these injuries, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited autodialed calls to cellular telephones.

42.    On behalf of the Classes, Plaintiff seeks an injunction requiring HealthRight to cease all unsolicited and unauthorized autodialed calling activities and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

43.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following four Classes:

> **Autodialed No Consent Class:** All persons in the United States who (1) from four years prior to the filing of this complaint to the present (2) Defendant (or a third person acting on behalf of Defendant) placed an autodialed call to; (3) the person's cellular telephone number; and (4) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

> **Autodialed Stop Call Class:** All persons in the United States who (1) from four years prior to the filing of this complaint to the present (2) Defendant (or a third person acting on behalf of Defendant) placed an autodialed call to (3) the person's cellular telephone number (4) after the person informed Defendant that s/he no longer wished to receive calls from Defendant.

> **Do Not Call Registry Class:** All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) called more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had

been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

**Stop Call DNC Registry Class:** All persons in the United States who from four years prior to the filing of this complaint to the present (1) Defendant (or a third person acting on behalf of Defendant) called, (2) on the person's telephone number, (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for the purpose of selling Defendant's products and services (5) at least thirty (30) days after the person informed Defendant (or a third person acting on behalf of Defendant) that s/he no longer wished to receive calls from Defendant (or a third person acting on behalf of Defendant)

44.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

45.    On information and belief, there are hundreds, if not thousands, of members of the Classes such that joinder of all members is impracticable.

46.    There are several questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Class members that may be answered in a single stroke include but are not limited to the following:

a.    whether Defendant's conduct constitutes a violation of the TCPA;

b.    whether Defendant utilized an automatic telephone dialing system to place autodialed calls to members of the Classes;

c.    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct;

d.    whether Defendant obtained prior express written consent to contact any class members;

e.    whether HealthRight's autodialed calls constitute telemarketing or were dual purpose messages, and

f.    to the extent Defendant's conduct does not constitute telemarketing, whether Defendant obtained prior express oral consent to contact any class members.

47.    The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes, including the annoyance and aggravation associated with such autodialed calls as well as the loss of cellular plan minutes and temporary inability to enjoy and use their cellular telephones, as

a result of the transmission of the autodialed calls alleged herein. Plaintiff and the other members of the Classes have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct of transmitting autodialed calls. Plaintiff's claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendant's wrongful conduct. Plaintiff, like other members of the Classes, received unsolicited autodialed calls from Defendant. Plaintiff is advancing the same claims and legal theory on behalf of himself and all absent members of the Classes.

48.    Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Classes. Plaintiff has no interest antagonistic to the interests of the other members of the proposed Classes and is subject to no unique defenses. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Classes.

49.    The suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted, and/or has refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief. Specifically, injunctive relief is necessary and appropriate to

require Defendant to discontinue placing unsolicited and unauthorized autodialed calls to the public. Likewise, Defendant has acted and fails to act on grounds generally applicable to the Plaintiff and the other members of the Classes in placing the autodialed calls at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

50.    In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are applicable to all consumers throughout the United States who received an unsolicited and unauthorized autodialed call from Defendant. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation presents a potential

for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

51.     Adequate notice can be given to the members of the Classes directly using information maintained in Defendant's records or through notice by publication.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Manske and the Autodialed No Consent Class)

52.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

53.     Defendant made unsolicited and unauthorized autodialed calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class without their prior express consent.

54.     Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Autodialed No Consent Class simultaneously and without human intervention. The telephone

dialing equipment utilized by Defendant, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendant's ATDS disseminated information *en masse* to Plaintiff and other members of the Autodialed No Consent Class.

55.    By placing unsolicited and unauthorized autodialed calls to Plaintiff and the cellular telephones of members of the Autodialed No Consent Class without their prior express consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

56.    Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

57.    In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

## SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Manske and the Autodialed Stop Call Class)

58.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

59.     Defendant and/or their agent placed unsolicited and unauthorized autodialed calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed Stop Call Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

60.     The telephone dialing equipment utilized by Defendant and/or their agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

61.     These unsolicited and unauthorized autodialed calls were made *en masse* and without the consent of the Plaintiff and the other members of the Autodialed Stop Call Class to receive such autodialed calls. Indeed, to the extent that consent had ever existed, it had been explicitly revoked by Plaintiff and the other members of the Autodialed Stop Call Class since they each had informed Defendant that they no longer wished to receive autodialed calls.

62.     Plaintiff and members of the Autodialed Stop Call Class expressly requested that Defendant no longer place autodialed calls to them, after which Defendant failed to place Plaintiff and members of the Autodialed Stop Call Class on Defendant's internal do-not-call list (or failed to do so within a reasonable time period).

63.    The autodialed calls made to Plaintiff and the Autodialed Stop Call Class were made after any consent had been expressly revoked by responding with an opt-out request.

64.    Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

65.    More than thirty days following Plaintiff's and the members of the Autodialed Stop Call Class' express requests to not receive autodialed calls from Defendant, Defendant placed additional autodialed calls to them without their consent and in contradiction of their requests not to be called.

66.    Defendant violated 47 C.F.R. § 64.1200 (d) by initiating calls for telemarketing purposes to residential and cellular telephone subscribers, such as Plaintiff and the Autodialed Stop Call Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

67.    As a result of such conduct, Plaintiff and the other members of the Autodialed Stop Call Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

68.    In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed Stop Call Class.

### THIRD CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On behalf of Plaintiff Manske and the Do Not Call Registry Class)**

69.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

70.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

71.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

72.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,'" which the Report and Order, in turn, provides as follows:

The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[10]

73.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

---

[10] 68 Fed. Reg. 44143, 44166 (July 25, 2003).

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

74.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff Manske and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

75.     Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy of dealing with do not call requests, by failing to inform or train its

personnel regarding any do not call list, and by failing to record and honor do not call requests.

76.    Defendant made more than one unsolicited telephone call to Plaintiff Manske and other members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiff Manske and other members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

77.    Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff Manske and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

78.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Manske and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff Manske and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

79.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the

amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**FOURTH CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On behalf of Plaintiff Manske and the Stop Call DNC Registry Class)**

80.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

81.    Plaintiff and other members of the Stop Call DNC Registry Class expressly requested that Defendant no longer place calls to them, after which Defendant failed to place Plaintiff and other members of the Stop Call DNC Registry Class on Defendant's internal do-not-call list (or failed to do so within a reasonable time period).

82.    More than thirty days following Plaintiff's and the other members of the Stop Call DNC Registry Class' express requests to not receive calls from Defendant, Defendant placed additional calls to them without their consent and in contradiction of their requests not to be called.

83.    Defendant violated 47 C.F.R. § 64.1200 (d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Stop Call DNC Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

84.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Stop Call DNC Registry Class received more than one telephone call within a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Stop Call Registry DNC Class suffered actual damages, an invasion of their privacy, and, under section 47 U.S.C. § 227(c), are each entitled to, *inter alia*, up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

85.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Stop Call Registry DNC Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christopher Manske, individually and on behalf of the Classes, prays for the following relief:

A.     An order certifying the Classes as defined above, appointing Plaintiff Christopher Manske as the representative of the Classes, and appointing his counsel as Class Counsel;

B.     An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the other Class Members;

C.     An order declaring that Defendant's actions, as set out above, violate the TCPA;

D.      A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

E.      An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

F.      An order requiring Defendant to identify any third-party involved in the autodialed calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

G.      An injunction requiring Defendant to cease all unsolicited autodialed calling activities, and otherwise protecting the interests of the Classes;

H.      An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

I.      An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

J.      An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

K.      An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

L.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: January 27, 2017         LOCKRIDGE GRINDAL NAUEN P.L.L.P.


By: s/  Robert K. Shelquist
      Robert K. Shelquist (#21301X)
      Rebecca A. Peterson (#0392663)
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rkshelquist@locklaw.com
rapeterson@locklaw.com

Maikel Eskander (*Pro Hac Vice to be Filed*)
LAW OFFICES OF STEFAN COLEMAN,
P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946
mike@stefancoleman.com

*Counsel for Plaintiff and the Putative Classes*